IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PERRIGO COMPANY, et al., | |
| Plaintiffs, | 8:14-CV-403 |
| vs. | |
| MERIAL LIMITED, doing business as MERIAL LLC, and MERIAL SAS, | MEMORANDUM AND ORDER |
| Defendants. | |

    This matter is before the Court on the Defendants' Motion to Dismiss or, in the Alternative, to Transfer Plaintiffs' Amended Complaint (filing 24). The defendants move to dismiss the plaintiffs' complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), or in the alternative to transfer the case to the Northern District of Georgia, pursuant to 28 U.S.C. § 1404. The Court will grant the defendants' motion to dismiss, in part, and deny it in part, and defer ruling on the defendants' alternative request to transfer the case to Georgia.

BACKGROUND

    The defendants in this case are Merial Limited d/b/a Merial LLC and Merial SAS (collectively, Merial). Merial Limited is a company limited by shares registered in England and Wales. Filing 26-9 at 2; *see generally* Companies Act, 2006, c. 46, § 3 (U.K.). Merial Limited is domesticated in the State of Delaware as Merial LLC. Filing 26-9 at 2; *see generally* Del. Code Ann. Tit. 6, § 18-212. Merial LLC has a registered agent in Nebraska for service of process. Filing 56-10 at 1-3. Merial SAS is a French société par actions simplifiée. Filing 26-9 at 3.

    Merial makes and sells flea and tick protection for household pets. Among other things, Merial makes "Frontline" products which are covered in part by a U.S. Patent that Merial holds (the '329 Patent). Filing 23 at 3. The plaintiffs, Perrigo Company, Sergeant's Pet Care Products, Velcera, and Fidopharm (collectively, Perrigo), are also in the business of flea and tick protection for household pets, and Merial and Velcera were involved in extensive litigation including disputes over the '329 Patent and what Merial said were Velcera's attempts to infringe it. Filing 23 at 4. But in August 2012, they settled their disputes with the Settlement Agreement that is the basis of

the current lawsuit. Filing 23 at 4-5. Velcera was acquired by Perrigo after the settlement was reached, and Perrigo assumed Velcera's rights and obligations under the agreement. Filing 23 at 5-6.

The Settlement Agreement permitted Perrigo to enter the over-the-counter market with its products no later than November 30, 2014. Filing 23 at 4. The '329 Patent will expire on August 5, 2016, and permitting Perrigo to enter the market before then would provide Perrigo with a head start over other competitors in the over-the-counter market. *See* filing 23 at 3, 5. Perrigo could also have entered the market earlier, if Merial notified Perrigo that it had granted another competitor a license to the '329 Patent—which Merial was, pursuant to the Settlement Agreement, only permitted to do in order to settle litigation that threatened the validity of the '329 Patent. Filing 23 at 4. Merial was required to provide Perrigo with notice if Merial offered to grant, or actually granted, a license to enter or remain in the over-the-counter market. Filing 23 at 4, 8. But absent those conditions—or the actual invalidity of the '329 Patent—Merial was expected to enforce the '329 Patent against other companies, and Perrigo was expected to pay Merial for the privilege. Filing 23 at 4-5, 12.

In March 2014, Perrigo became aware of settlement discussions in a Georgia lawsuit between Merial, Horizon Valley Generics, Inc., and Ceva Sante Animale, S.A., that involved the '329 Patent. Filing 23 at 6-7. Perrigo contacted Merial, but Merial did not provide notice, pursuant to the Settlement Agreement, of settling any other litigation. Filing 23 at 6. The Georgia litigation was dismissed in April. Filing 23 at 7. Nonetheless, Perrigo continued to hear of the impending launch of a competing product. Filing 23 at 8-10. And eventually, Merial did notify Perrigo that a third-party license had been offered and granted. Filing 23 at 10-11. Perrigo sued Merial for alleged breach of the Settlement Agreement. Filing 23. Merial filed a motion to dismiss asserting a lack of personal jurisdiction. Filing 24.

## STANDARD OF REVIEW

When jurisdiction is challenged on a pretrial motion to dismiss, the nonmoving party need only make a prima facie showing of jurisdiction. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011). The evidence is viewed in the light most favorable to the plaintiff. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 592 (8th Cir. 2011). Nonetheless, if the defendant controverts or denies jurisdiction, the plaintiff still carries the burden of proof. *See*, *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012); *Viasystems*, 646 F.3d at 592; *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010); *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008). The

plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto. *Dairy Farmers,* 702 F.3d at 475; *Miller,* 528 F.3d at 1090*; Coen v. Coen,* 509 F.3d 900, 904-05 (8th Cir. 2007).

## DISCUSSION

Merial argues that the Court lacks personal jurisdiction because it lacks the "contacts, ties, or relations" with Nebraska necessary to satisfy due process. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945). In order to satisfy due process, a defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Pangaea,* 647 F.3d at 745; *see also Dairy Farmers,* 702 F.3d at 477. The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there. *Viasystems,* 646 F.3d at 594; *see also Dairy Farmers,* 702 F.3d at 477. Purposeful availment is required to ensure that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person. *Stanton v. St. Jude Med., Inc.,* 340 F.3d 690, 693-94 (8th Cir. 2003). Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant itself that create a substantial connection with the forum state. *Id.* at 694.

The minimum contacts necessary for due process may be the basis for either "general" or "specific" jurisdiction. *Dairy Farmers,* 702 F.3d at 475; *Johnson v. Arden,* 614 F.3d 785, 794 (8th Cir. 2010). A court obtains general jurisdiction against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum. *Id.* Specific jurisdiction over a defendant, on the other hand, is exercised when a state asserts personal jurisdiction over a nonresident defendant that has purposefully availed itself of the privilege of conducting business in the forum in a suit arising out of or related to the defendant's contacts with the forum. *See*, *Pangaea,* 647 F.3d at 745-46; *Johnson,* 614 F.3d at 794-95. It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Dairy Farmers,* 702 F.3d at 477; *see also Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

Merial contends that specific jurisdiction does not exist because the events giving rise to this litigation arose out of contacts with Georgia, not Nebraska. Filing 33 at 8-10. Perrigo, on the other hand, contends that this

- 3 -

litigation arises out of an agreement that required Merial to direct its performance at the plaintiffs in Nebraska. Filing 59 at 17. Merial also contends that general personal jurisdiction does not exist because none of the Merial entities is either incorporated in or has its principal place of business in Nebraska, and they have minimal contacts with the state. Filing 33 at 6-8. Perrigo contends, to the contrary, that Merial's products are manufactured by Perrigo in Nebraska, that Merial has contracted with other Nebraska businesses, and that Merial has sued in Nebraska courts. Filing 59 at 19-20. And Perrigo contends that Merial has consented to jurisdiction in Nebraska. The Court will address each contention in turn.

## SPECIFIC JURISDICTION

As just noted, specific jurisdiction over a defendant is exercised when a state asserts personal jurisdiction over a nonresident defendant that has purposefully availed itself of the privilege of conducting business in the forum in a suit arising out of or related to the defendant's contacts with the forum. *See*, *Pangaea*, 647 F.3d at 745-46; *Johnson*, 614 F.3d at 794-95. In a contract case, the Court is to evaluate prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine whether the defendant purposefully established minimum contacts within the forum. *Dairy Farmers*, 702 F.3d at 477; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). And the Eighth Circuit has set forth a five-part test for measuring a defendant's contacts with a forum state: (1) the nature and quality of the contacts with the forum state, (2) the quantity of those contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Dairy Farmers*, 702 F.3d at 477; *Wells Dairy*, 607 F.3d at 518. The third factor distinguishes whether the jurisdiction is general or specific. *Johnson*, 614 F.3d at 794. The first three factors are primary factors, and the remaining two are secondary. *Id*. And a court is to look at all the factors in the aggregate and examine the totality of the circumstances in determining personal jurisdiction. *Id.*; *see Dairy Farmers*, 702 F.3d at 477.

Perrigo's argument for specific jurisdiction is primarily based on Merial's communications directed at Perrigo in Nebraska regarding performance of the Settlement Agreement. Perrigo and Merial sent correspondence back and forth regarding various aspects of the Settlement Agreement. Filing 20-2 at 4-14. And Perrigo performed its obligations under the Settlement Agreement from Nebraska, including payments to Merial. Filing 20-2 at 10.

It is, however, well established that the "'use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process.'" *Wells Dairy*, 607 F.3d at 519 (quoting *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 656 (8th Cir. 1982)); *see also, e.g.*, *Dairy Farmers*, 702 F.3d at 476-77; *Viasystems*, 646 F.3d at 594; *Institutional Feed Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th Cir. 1984); *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 453, 455 (8th Cir. 1977). "Indeed, these isolated connections are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Viasystems*, 646 F.3d at 594. And entering into a contract with a forum resident, standing alone, does not provide the requisite contacts between a nonresident defendant and the forum state either, because it is the contacts between the defendant and the forum state—not a forum resident—that are of interest. *See Mountaire Feeds*, 677 F.2d at 655; *see also, Golden State Strawberries*, 747 F.2d at 456; *Aaron Ferer & Sons*, 558 F.2d at 455 n.6.

For instance, in *Dairy Farmers*, 702 F.3d at 474, a Missouri cooperative sued a Canadian commodities broker in Missouri. Applying its five-part test, the Eighth Circuit found that due process did not permit that exercise of jurisdiction. *Dairy Farmers*, 702 F.3d at 479. The Eighth Circuit found the nature and quality of the defendant's contacts with Missouri to be lacking, despite the fact that the defendant sought and received credit from a company in Missouri, and solicited the plaintiff's business knowing that it had a Missouri headquarters. *Id.* at 478. The quantity of the contacts—scattered emails and telephone calls—also weighed against jurisdiction. *Id.* at 479. The inconvenience to the parties, the Eighth Circuit said, was balanced: litigation in Missouri likely inconvenienced the defendant, while litigation elsewhere likely inconvenienced the plaintiff. *Id.* And while Missouri had an interest in providing a forum for a company headquartered there, that did not overcome the insufficiency of the defendant's contacts with Missouri. *Id.*

Likewise, in *Mountaire Feeds*, 677 F.2d at 652, an Arkansas manufacturer sued a foreign corporation in Arkansas, based on the defendant's refusal to pay for the last few shipments the plaintiff had sent the defendant. The Eighth Circuit found the defendant's contacts with Arkansas to be insufficient. *Id.* The defendant had ordered from the plaintiff by telephone, and confirmed the purchase by letter; the defendant had also provided the plaintiff with a letter of credit presented through an Arkansas bank. *Id.* And the parties had exchanged other communications concerning packaging, labeling, and shipping. *Id.* But the Eighth Circuit found the parties' correspondence, communications, and payment in Arkansas to be

insufficient minimum contacts to support the exercise of jurisdiction. *Id.* at 655-56; *see also Viasystems*, 646 F.3d 589.

*Aaron Ferer & Sons*, 558 F.2d 450, is to the same effect. In that case, the Nebraska plaintiff purchased goods from the out-of-state defendants for resale to third parties, but alleged that the defendants had either diverted the goods or misappropriated the proceeds. *Id.* at 452 n.3. The plaintiff relied on the following contacts between the defendants and Nebraska:

> numerous letters and telephone calls between [plaintiff]'s office in Omaha, Nebraska, and [defendants]' offices in various other states; payments prepared by [plaintiff] in Omaha and drawn on [plaintiff]'s account at an Omaha bank; contracts prepared by [plaintiff] in Omaha, mailed to [defendants] in states outside Nebraska, acknowledged by [defendants], and mailed back to [plaintiff] in Omaha; and sales orders prepared by [certain defendants] at their offices outside Nebraska, mailed to [plaintiff] in Omaha, acknowledged by [plaintiff], and returned by mail to [defendants].

*Id.* at 452-53. But the Eighth Circuit found those facts insufficient. *Id.* at 454. The letters and telephone calls, the court observed, "in this purely commercial setting did not supply the necessary minimal contact." *Id.* at 455.

The Court finds that authority to be controlling here. The nature and quality, and quantity, of Merial's connections to Nebraska with respect to the Settlement Agreement are, if anything, even more attenuated. It is important to remember that the relationship between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). And the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* So,

> the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. Due process requires that a defendant be haled into court in a forum State based on his own

affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State.

*Id.* at 1122-23 (citations omitted).

The rest of the Eighth Circuit's five-part test does little to help Perrigo. Admittedly, Merial's connections with Nebraska are related to Perrigo's claim for relief. And Nebraska certainly has an interest in providing a forum for its corporations, although that interest is attenuated in this case: for instance, tort cases involve interests of the state not present in contract cases. *Aaron Ferer & Sons*, 558 F.2d at 455 n.7. The inconvenience to the parties does not favor one side or the other; as in *Dairy Farmers*, 702 F.3d at 479, either party is likely to be inconvenienced outside its own state. And "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 134 S. Ct. at 1222.

On balance, while there are factors weighing in favor of jurisdiction, the Court finds that those factors do not overcome the insufficiency of Merial's contacts with Nebraska. *See Dairy Farmers*, 702 F.3d at 479. Specific jurisdiction is not appropriate here.

## GENERAL JURISDICTION

As noted above, a court obtains general jurisdiction against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum. *Id.* at 475. But the bar for general jurisdiction is high. A court may only "'assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

Perrigo points out that in addition to the contacts set forth above, Merial LLC is registered to do business in Nebraska. Filing 56-10 at 1-3. (More on that a bit later.) Merial owned property in Nebraska through a former subsidiary. Filings 56-6 to 56-8. Merial has sponsored medical research that was conducted in Nebraska. Filings 56-12 to 56-17; filing 56-22. Merial has sent goods and services in and out of Nebraska. Filing 56-11; filing 56-18. Merial has purchased products made by Perrigo, and paid Perrigo for them in Nebraska. Filing 57-1. And Merial has on at least two occasions sued Nebraska residents in Nebraska court. Filing 56-2; filing 56-3.

- 7 -

But a continuous activity of some sort within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity. *Goodyear*, 131 S. Ct. at 2856 (citing *Int'l Shoe*, 326 U.S. at 318). For instance, in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the defendant's contacts with the forum state consisted of sending its chief executive officer there to negotiate a contract, accepting into its New York bank account checks drawn on a forum bank, purchasing equipment and training services from a company in the forum state, and sending personnel there for training. 466 U.S. 408, 416 (1984). Those contacts, the Supreme Court explained, were insufficient to support the exercise of jurisdiction over a claim that neither arose out of nor related to the defendant's activities in the forum. *Id.* at 415-416.

Merial's contacts with Nebraska are comparable here, and yield the same result, particularly in light of the impressive scope of Merial's worldwide enterprises. "The general jurisdiction inquiry," the Supreme Court has explained, "does not focus solely on the magnitude of the defendant's in-state contacts. General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20 (citations and quotations omitted). Only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. *Daimler*, 134 S. Ct. at 760. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853-54. General jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum state, *i.e.*, comparable to a domestic enterprise in that State. *Daimler*, 134 S. Ct. at 758 n.11.

It is apparent, when Merial's nationwide and worldwide activities are considered, that Merial is not at home in Nebraska. The Court cannot exercise general jurisdiction over Merial.

### IMPLIED CONSENT TO JURISDICTION

As previously noted, Merial LLC is registered to do business in Nebraska, and has appointed an agent to receive service of process. Filing 56-10 at 1-3. Perrigo argues that as a result, Merial has consented to suit in Nebraska. Filing 59 at 11-15. At least as to Merial LLC, the Court agrees.

Because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give

express or implied consent to the personal jurisdiction of the Court. *Burger King*, 471 U.S. at 473 n.14.

> Consent is the other traditional basis of jurisdiction, existing independently of long-arm statutes. Personal jurisdiction, unlike subject-matter jurisdiction, is primarily concerned with fairness to individual parties. Objections to jurisdiction over the person may be waived, either expressly or by not asserting them in a timely manner. A defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it.

*Knowlton v. Allied Van Lines*, 900 F.2d 1196, 1199 (8th Cir. 1990). And "[o]ne of the most solidly established ways of giving such consent is to designate an agent for service of process within the State." *Id.*; *see Bendix Autolite Corp. v. Midwesco Enters, Inc.*, 486 U.S. 888, 892 (1988).

Accordingly, the Eighth Circuit has repeatedly held that a state's requirement that a foreign corporation submit to the jurisdiction of that state's courts in order to qualify to do business does not need to be tested under the due process "minimum contacts" analysis set forth in *Int'l Shoe*; instead, appointment of an agent for service of process constitutes consent to jurisdiction, and the Due Process Clause is satisfied. *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1396 (8th Cir. 1993); *Ytuarte v. Gruner + Jahr Printing & Publ'g*, 935 F.2d 971, 973 (8th Cir. 1991); *Knowlton*, 900 F.2d at 1199-1200; *see Bendix*, 486 U.S. at 892; *see also, e.g., Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991); *Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 697 (1st Cir. 1984); *Merriman v. Crompton Corp.*, 146 P.3d 162, 170-71, 174-77 (Kan. 2006); *cf.*, *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 170 (1939); *Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 94-95 (1917). And it is equally clear that designating an agent upon whom process may be served operates, under Nebraska law, as a consent to jurisdiction. *Mittelstadt v. Rouzer*, 328 N.W.2d 467, 469 (Neb. 1982); *see Starbucks Corp. v. S.D. Network LLC*, No. 8:11-cv-237, 2011 WL 6399550, at *2-3 (D. Neb. Dec. 20, 2011).

Merial contends that the Supreme Court's recent decision in *Daimler* is inconsistent with that rule. The Court is not convinced. Merial seems to believe that the question is whether registering to do business in Nebraska is sufficient to establish general jurisdiction. *See* filing 71 at 9. But the question is whether Merial LLC has, by registering, *consented* to suit in Nebraska. *Daimler* only speaks to whether general jurisdiction can be appropriately exercised over a foreign corporation that *has not consented to suit* in the

forum. *See Daimler*, 134 S. Ct. at 755-56; *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 136 n.15. It does nothing to affect the long-standing principle that a defendant may consent to personal jurisdiction. *See Gucci*, 768 F.3d at 136 n.15; *see also, Otsuka Pharm. Co., Ltd. v. Mylan Inc.*, No. 14-4508, 2015 WL 1305764, at *10-11 (D.N.J. Mar. 23, 2015); *Forest Labs., Inc. v. Amneal Pharm. LLC*, No. CV-14-508, 2015 WL 880599, at *13-14 (D. Del. Feb. 26, 2015). *Daimler* circumscribes the extent to which a defendant can be *compelled* to submit to general jurisdiction, but it does nothing to limit the defendant's capacity to *consent* to jurisdiction—and therefore, it does nothing to upset well-settled law regarding what acts may operate to imply consent. *See, Otsuka*, 2015 WL 1305764, at *10; *Forest Labs.*, 2015 WL 880599, at *12-14.

Furthermore, as far as this Court is concerned, it is the Eighth Circuit's prerogative to overrule its own decisions. *See, Rodriquez de Quijas v. Shearson/Am. Express*, 490 U.S. 477, 484 (1989); *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003); *Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 622 (8th Cir. 2001). And accepting Merial's argument would also require the Court to conclude that *Daimler*, *sub silentio*, abrogated the Supreme Court's reasoning in cases like *Pa. Fire*, *Neirbo*, and *Bendix*—and it is even more clear that the Supreme Court has reserved to itself the prerogative of overruling its own decisions. *See Rodriguez de Quijas*, 490 U.S. at 484. The Court remains constrained by the Eighth Circuit's decisions in *Sondergard*, *Ytuarte*, and *Knowlton*, and pursuant to that authority concludes that Merial LLC has consented to personal jurisdiction in Nebraska.

But that does not end the Court's inquiry, because as Merial points out, Merial LLC may have registered in Nebraska, but Merial SAS has not. Filing 71 at 9. The Court is aware of no authority suggesting that Merial LLC's consent to jurisdiction is imputable to Merial SAS simply by virtue of their corporate affiliation.[1] And as explained above, Merial SAS does not have the contacts with Nebraska necessary to support either specific or general jurisdiction. So, the Court will grant Merial's motion to dismiss with respect to Merial SAS.

Merial also tries to argue that "only the corporate entities Merial Limited and Merial SAS are defendants in this action" and that "[n]either Merial Limited nor Merial SAS have registered to do business in Nebraska."

---

[1] Perhaps that might be the case if Merial LLC was so dominated by Merial SAS as to be its alter ego—essentially, piercing the corporate veil. *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653-55 (5th Cir. 2002) (collecting cases); *see also Miller v. Tony & Susan Alamo Found.*, 924 F.2d 143, 148 (8th Cir. 1991); *cf., Viasystems*, 646 F.3d at 596; *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975). But there is no evidence to establish that, and Perrigo does not advance the theory.

Filing 71 at 9. The Court finds no merit to the claim that Merial Limited is not a party here: Merial admits that Merial Limited is domesticated in Delaware as Merial LLC, which means Merial Limited and Merial LLC *are the same entity*.

> When a non-United States entity has become domesticated as a limited liability company pursuant to [Del. Code Ann. Tit. 6, § 18-212] . . . the limited liability company shall be deemed to be the same entity as the domesticating non-United States entity and the domestication shall constitute a continuation of the existence of the domesticating non-United States entity in the form of a domestic limited liability company.

Del. Code Ann. Tit. 6, § 18-212(i). It is not clear to the Court on what basis Merial can suggest otherwise.

Nonetheless, Merial SAS has neither consented to jurisdiction in Nebraska nor subjected itself to personal jurisdiction by virtue of its contacts with Nebraska.

## CONCLUSION

For the reasons explained above, the Court finds that neither Merial entity can be subjected to specific or general jurisdiction in Nebraska. Merial SAS has not consented to jurisdiction, but Merial LLC has. So, the Court will grant Merial's motion to dismiss in part, but deny it in part.

What remains is Merial's alternative request to transfer this case to the Northern District of Georgia. Perrigo has opposed that request, but the Court will give Perrigo an opportunity to reconsider its opposition in light of the Court's ruling on Merial's motion to dismiss. Perrigo may continue this case in Nebraska against Merial LLC. But Perrigo may now prefer to litigate in Georgia, where Merial has implicitly conceded that both Merial entities are subject to jurisdiction.[2] And that would also remove any cloud over jurisdiction cast by how the Eighth Circuit might, on appeal, evaluate its registration-equals-consent rule in light of *Daimler*.

So, the Court will defer dismissing Merial SAS as a party for 14 days. The Court will direct Perrigo to advise the Court, on or before April 21, 2015,

---

[2] It has been held that moving to transfer a case to a different district waives any objection to jurisdiction in that district. *See*, *Aziz v. Leferve*, 830 F.2d 184, 186 (11th Cir. 1987); *Liaw Su Teng v. Shaarup Shipping Co.*, 743 F.2d 1140, 1149-50 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987); *Epperson v. Entm't Express*, 338 F. Supp. 2d 328, 334-35 (D. Conn. 2004).

whether it intends to proceed in Nebraska or whether it withdraws its opposition to transferring this case to the Northern District of Georgia.[3]

IT IS ORDERED:

1. The Defendants' Motion to Dismiss or, in the Alternative, to Transfer Plaintiffs' Amended Complaint (filing 24) is granted in part and denied in part.

2. The plaintiffs are directed to advise the Court, on or before April 21, 2015, whether they oppose the defendants' motion to transfer this case to the Northern District of Georgia.

3. The Clerk of the Court is directed to set a case management deadline of April 21, 2015, with the following docket text: "Check for transfer of case or dismissal of party Merial SAS."

Dated this 7th day of April, 2015.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge

---

[3] That should not be understood as denying Merial's motion for change of venue should Perrigo continue to oppose it. Should Perrigo continue to resist transfer, Merial's motion for change of venue will be referred to the United States Magistrate Judge for determination pursuant to 28 U.S.C. § 1404(a).