IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PERRIGO COMPANY, SERGEANT'S PET CARE PRODUCTS, INC., VELCERA, INC., FIDOPHARM, INC.,<br><br>            Plaintiffs,<br><br>       vs.<br><br>MERIAL LIMITED,<br><br>            Defendant. | 8:14CV403<br><br>**MEMORANDUM AND ORDER** |

     This matter is before the court on Defendant's motion to transfer venue to the Northern District of Georgia, (Filing No. 24). For the reasons set forth below, the motion is granted.

BACKGROUND

     This matter involves an alleged breach of contract by Defendant Merial Limited ("Merial").[1] The complaint was filed on December 12, 2014. (Filing No. 1). Plaintiff Perrigo Company is a Michigan company with its principal place of business in Michigan. Plaintiff Perrigo Animal Health is a Michigan corporation with its principal place of business in Nebraska. Velcera, Inc. and FidoFharm are Delaware corporations with their principal places of business in Nebraska. (Filing No. 1 ¶¶6-8 at CM/ECF p. 2). Defendant Merial is corporation with its principal place of business in Georgia.

     On or around 2011, Merial and Velcera were engaged in litigation regarding certain Merial products covered by one or more claims of U.S. Patent No. 6,069,329 (the " '329 Patent"). The parties entered a Master Settlement Agreement ("MSA") to resolve

---

[1] The original complaint also named Merial SAS as a defendant. Pursuant to the Memorandum and Order of the Hon. John M. Gerrard, Merial SAS was dismissed from the action for lack of personal jurisdiction. (Filing No. 96).

the dispute. In exchange for payments to Merial, the terms of the MSA granted Velcera the opportunity to enter the market prior to the expiration of the '329 Patent and compete with Merial products under certain specific conditions enumerated in the MSA. Merial was responsible for providing Velcera notice if one of the events triggering Velcera's right to compete and enter the market was triggered.

Perrigo acquired Velcera in or around April of 2013. Accordingly, Perrigo assumed all of Velcera's rights under the MSA. The case now before the court involves a dispute about whether Merial breached its obligations under the MSA. Specifically, Plaintiffs assert Merial breached the MSA by making an offer to grant a permission, right or license to a third party with respect to the '329 patent in breach of the MSA and without providing Plaintiff's notice of the event. As a result, Plaintiff alleges it was not allowed to take it's competing products to market in a timely manner, as contemplated by the MSA.

Plaintiffs filed suit in this court. Defendant filed a motion to dismiss, which was granted only as to Merial SAS. In the alternative, Defendant also moved to have the case transferred to the Northern District of Georgia. That motion is now before the court.

ANALYSIS

Under section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a).

> The statute "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper." Van Dusen v. Barrack, 376 U.S. 612, 634 n. 30, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting Revisor's Note, H.R.Rep. No. 80–308, at A132 (1947), and H.R.Rep. No. 79–2646, at A127 (1946)).

> "Congress, in passing § 1404(a), was primarily concerned with the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one." Id. at 634, 84 S.Ct. 805.

In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010)

When considering a motion to transfer under § 1404(a), the court must balance both the parties' private interests and the interests of the public. The private interests include:

> (1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, [and] (4) the location where the conduct complained of occurred . . . .

Terra Int'l., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 696 (8th Cir. 1997).

Public interests, designed to address § 1404(a)'s "interest of justice" factor, include: 1) judicial economy, 2) the plaintiff's choice of forum; 3) the comparative costs of litigating in each forum, 4) each party's ability to enforce a judgment, 5) obstacles to a fair trial, 6) conflict of law issues, 7) and the advantages of having a local court determine questions of local law. See Terra Int'l, 119 F.3d at 699 (citations omitted).[2] In addition

---

[2] As noted by the Supreme Court in Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 134 S.Ct. 568, 581 (2013):

> Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Ibid. (internal quotation marks omitted). The Court must also give some weight to the plaintiffs'

to the general factors set forth in section 1404(a), the court conducts a "case by case evaluation of the particular circumstances at hand and considers all relevant factors." Terra Int'l., 119 F.3d at 691. The federal court gives deference to a plaintiff's choice of forum by placing the burden of proof on the party seeking transfer. Id. at 695.

    A.    Convenience of the Parties and Witnesses

Defendant asserts the Northern District of Georgia is a more convenient forum for the parties and witnesses. In support of its assertion, Defendant states Merial and "the majority of critical witnesses" are located in or closer to Georgia. Specifically, it alleges testimony from witnesses in Georgia, Philadelphia, and France will be "more material and more important than any testimony proffered by any potential witnesses located in Nebraska." Filing No. 25 at CM/ECF p. 19. Defendant names several witnesses who were involved in the negotiation of the MSA who currently reside in Georgia.

Plaintiffs counter that a significant number of witnesses are in Nebraska, including Plaintiffs' employees who allegedly communicated with Defendant regarding the potential breach of contract. And Plaintiffs identify several such employees who will provide testimony to those conversations and were involved in other key business decisions.

With respect to the party witnesses, the fact that many key witnesses are in Georgia is of little consequence because, based on the representations of Plaintiffs, other party witnesses are located in Nebraska. Whether the trial is in Nebraska or Georgia, it will be inconvenient for at least one of the parties. Moving venue to Georgia from the

---

    choice of forum. See Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

Atlantic Marine, 134 S.Ct. at 581 n. 6.

plaintiffs' chosen venue will merely shift the inconvenience onto the plaintiffs. Thus, the location of the witness representing the parties is not a particularly helpful factor for Defendant.

However, the potential burden on non-party witnesses to travel to Nebraska may be significant. Although non-party witnesses attending trial will have to travel whether the trial is in Nebraska or Georgia, Defendant has submitted persuasive evidence demonstrating the burden on non-parties flying to Atlanta would be less expensive and less time-consuming than if they are required to travel to Nebraska. This is particularly true for any witness traveling to the United States from out of the country. A trial conducted in the Northern District of Georgia would be more convenient for many of the non-party witnesses.

      B.     Accessibility of Records and Documents

Defendants argue the majority of records are in Georgia and potentially in France. Plaintiffs do not dispute this fact. While this factor weighs in favor of transfer to Georgia, the court gives it little weight absent a showing the documents do not exist electronically or cannot be easily converted to a transferable electronic format.

      C.     Complained of Conduct

Defendant argues the majority of the conduct at issue occurred in Georgia. Specifically, Defendant points to the negotiations and execution of the MSA. Plaintiff alleges some of the conduct occurred in Nebraska because Plaintiffs' representatives in Nebraska corresponded with Merial in Nebraska regarding Merial's performance, or lack thereof, under the MSA.

Plaintiffs likely communicated with Merial regarding the performance of the MSA from Nebraska after Plaintiffs suspected a breach of the MSA. But Plaintiffs do not argue any Merial employees were ever present in Nebraska or conducted negotiations or meetings in the State of Nebraska. The complained of conduct – the breach of the MSA in the form of Merial making an offer to grant a permission, right or license to a third party with respect to the '329 patent – did not occur in Nebraska and likely involved Merial's employees in Georgia. This factor favors transfer to the Northern District of Georgia.

D. Judicial Economy

Defendants argue the need for judicial economy strongly favors transfer to the Northern District of Georgia. Merial is currently involved in litigation in federal court in the Northern District of Georgia with Velcera, FidoPharm, and Sergeant's regarding a false advertising claim. Some provisions of the MSA are at issue in that suit and are relevant to the claims and/or defenses in that action. Thus, Merial asserts, the Northern District of Georgia is already familiar with the parties and the provisions in the MSA. Additionally, Merial has apparently filed a breach of contract action against Plaintiffs in the Northern District of Georgia and that case was assigned as a related case to the false advertising action.[3] (Filing No. 25 at CM/ECF p. 24). Although Plaintiffs assert the Georgia litigation has "nothing to do with Merial's breach of the MSA" in this case, the court cannot discount the advantage and efficiency of having a court familiar with the parties, the MSA, and the other facts of this case adjudicate this matter concurrently with the other pending litigation between the parties. This factor weighs heavily in favor of transfer.

---

[3] The case in the Northern District of Georgia is currently stayed pending the resolution of this motion.

E.     Other Factors.

Plaintiffs' choice of venue deserves deference.  But Georgia has an interest in determining matters of local law.  While this is a breach of contract case, and a Nebraska federal court can research and apply Georgia law, a Georgia court's interest in adjudicating matter of local law favors transfer, albeit only slightly.

The court finds Defendant has met its burden of proving transfer to the Georgia federal court is proper under 28 U.S.C. § 1404(a).  The convenience of the Northern District of Georgia for non-party witnesses, the Georgia forum's established history with these parties and their litigation, and the Georgia court's interest in determining matters of Georgia law are, on balance, sufficient to tip the scale from the Plaintiffs' chosen Nebraska venue to the Defendant's requested venue, the Northern District of Georgia.

Accordingly,

IT IS ORDERED: Defendant's motion to transfer venue, (Filing No. 24) is granted.

Dated this 12th day of June, 2015

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.